## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

**Chambers of**                                                           **101 West Lombard Street**
**Douglas R. Miller**                                                    **Baltimore, Maryland 21201**
**United States Magistrate Judge**                          **MDD_DRMChambers@mdd.uscourts.gov**
                                                                                  **(410) 962-7770**


May 8, 2026


LETTER TO ALL COUNSEL OF RECORD

Re:      *William S. v. Frank Bisignano, Commissioner, Social Security Administration*
           Civil No. 25-2000-DRM

Dear Counsel:

On June 23, 2025, Plaintiff William S. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301. I have considered the record in this case (ECF No. 8) and the parties' briefs (ECF Nos. 14, 17 and 18). I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision and REMAND the case for further consideration. This letter explains why.

## I.      PROCEDURAL BACKGROUND

Plaintiff filed a Title XVI application for Supplemental Security Income ("SSI") Benefits on March 1, 2022, alleging a disability onset of March 26, 2020.[1] Tr. 18. Plaintiff's claims were denied initially and on reconsideration. Tr. 18. On April 1, 2025, an Administrative Law Judge ("ALJ") held a hearing. Tr. 18-33. Following the hearing, on April 18, 2025, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 33. On May 5, 2025, the Appeals Council denied Plaintiff's request for review, Tr. 1-7, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.      THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

---

[1] Plaintiff filed earlier applications, which were denied. TR. 93. This review is limited to Plaintiff's current application.

[2] 42 U.S.C. §§ 301 et seq.

*William S. v. Frank Bisignano*
Civil No. 25-2000-DRM
May 8, 2026
Page 2

continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since March 1, 2022, the application date." Tr. 20. At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "degenerative disc disease, lumbar and cervical radiculopathy, carpal tunnel syndrome, neuropathy due to HIV, ulnar neuropathy, bipolar disorder, anxiety disorder, depressive disorder, and posttraumatic stress disorder (PTSD)." Tr. 20. The ALJ also determined that Plaintiff suffered from the non-severe impairments of "HIV infection" and "asthma." Tr. 20-21. The ALJ determined that Plaintiff's medical history contained reports of ailments that were non-medically determinable impairments as to Plaintiff, specifically, "fibromyalgia" and "seizure disorder." Tr. 21-22. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 22. The ALJ also determined that Plaintiff retained the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 416.967(b) except he can never climb ladders, ropes, or scaffolds; and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  He can occasionally operate foot controls bilaterally.  He can frequently handle bilaterally.  He can never be exposed to hazards such as dangerous moving machinery and unprotected heights.  He can understand, remember, and carry out simple instructions and make simple work related decisions.  He can perform work without a specific production rate pace, such as an assembly line or hourly production quotas.  He can tolerate occasional interaction with coworkers, supervisors, and the public.  He can tolerate occasional changes in work setting. He can tolerate excessive exposure to atmospheric conditions.

Tr. 24-25. At steps four and five, the ALJ determined that Plaintiff had no past relevant work but could perform jobs that existed in significant numbers in the national economy, such as routing clerk/ mail sorter, cafeteria attendant, small parts assembler, telephone / information clerk, and election / poll clerk. Tr. 31-32. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 33.

## III.    LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive .

*William S. v. Frank Bisignano*
Civil No. 25-2000-DRM
May 8, 2026
Page 3

. . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla but may be somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, the Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.    ANALYSIS

On appeal, Plaintiff makes two arguments. First, he argues that the ALJ used an "undefined restriction" in the hypothetical to the vocational expert ("VE"), on which the VE later improperly relied, and then adopted an RFC which contained the same restriction. ECF No. 14 at 7. Specifically, that Plaintiff can perform work without "a specific production rate pace, such as an assembly line or hourly production quotas." ECF No. 14 at 7-8. Plaintiff alleges that the ALJ failed to provide a narrative discussion to define the restriction, explain the source of the restriction, or explain how it addressed Plaintiff's limitations, which rendered the restriction so undefined as to "preclude judicial review." ECF No. 14 at 9-13. Second, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's fibromyalgia or develop additional evidence to do so. ECF No. 14 at 13-20.

In response, the Commissioner contends that the Court can trace the ALJ's reasoning in including the restriction, substantial evidence supports the ALJ's findings, courts have found a similar restriction accounts for limitations similar to Plaintiff's, and additional restrictions provide the necessary context for the Court to review the RFC. ECF No. 17 at 6-12. The Commissioner also argues that "Plaintiff failed to show he met the criteria for a medically determinable impairment of fibromyalgia," and that he fails to identify any additional restriction the ALJ should have included in the RFC. ECF No. 17 at 13-16. Plaintiff replies by reasserting that the ALJ failed to explain what she meant by the term and failed to build a logical bridge from the evidence to that specific restriction for Plaintiff, rendering it unreviewable. ECF No. 18 at 1-2. Plaintiff reiterates that the ALJ improperly discounted fibromyalgia as part of Plaintiff's medical history and then failed to properly consider it and its effects throughout the evaluation. ECF No. 18- at 2-3.

This opinion focuses on Plaintif's argument related to the RFC restriction that Plaintiff work without "a specific production rate pace, such as an assembly line or hourly production quotas." Tr. 24.

In *Thomas v. Berryhill*, the Fourth Circuit found that an ALJ's RFC limitation excluding work that "require[d] a production rate or demand pace" prevented meaningful judicial review because the ALJ failed to explain what those phrases meant. 916 F.3d 307, 312 (4th Cir. 2019), *as amended* (Feb. 22, 2019). With "production rate" and "demand pace" left undefined, the court concluded that it was "difficult, if not impossible" to determine "whether their inclusion in [the]

*William S. v. Frank Bisignano*
Civil No. 25-2000-DRM
May 8, 2026
Page 4

RFC is supported by substantial evidence." *Id*. Without deciding whether the RFC itself was substantively correct, the court remanded for "a clearer window into" the ALJ's reasoning. *Id*. at 313, n.5.

Although the court in *Thomas* identified additional grounds for remand, later decisions have relied solely on the failure to define ambiguous RFC terms as sufficient justification for reversal. *See Perry v. Berryhill,* 765 F. App'x 869, 873 (4th Cir. 2019) ("Because the ALJ's failure to explain the meaning of 'non-production oriented work setting' requires us 'to guess about how [she] arrived at [her] conclusions' and leaves us 'uncertain as to what [she] intended,' we conclude that her assessment is 'lacking in the analysis needed for us to review meaningfully [her] conclusions'") (quoting *Mascio v. Colvin*, 780 F.3d 632, 636–37 (4th Cir. 2015)). *See also, e.g., Adrian H. v. Comm'r, Soc. Sec. Admin.*, No. SAG-20-3268, 2022 WL 112033, at *1 (D. Md. Jan. 12, 2022) (remanding where an "ALJ presented the VE with a hypothetical including 'no fast pace or strict production requirements,' with no further definition of those terms"); *Trena Sue Y. v. Kijakazi*, No. DLB-20-1075, 2021 WL 4034264, at *4 (D. Md. Sept. 3, 2021) (remanding where RFC limited plaintiff to work "requiring no fast paced production," which the court analogized to the terms in *Thomas* and *Perry* "both in form and defect"); *Jennifer Anne S. v. Saul*, No. TMD 20-519, 2021 WL 2139432, at *5 (D. Md. May 26, 2021) (remanding where RFC limited plaintiff to work "which would not require a fast pace or production quotas such as would customarily be found working on an assembly line" and collecting cases remanding based on similar undefined RFC terms); *Geneva W. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-1812, 2019 WL 3254533, at *3 (D. Md. July 19, 2019) ("First, while the phrase 'production rate pace' is used in an appendix to the DOT, a definition is not provided. Second, the term 'production pace or strict production quotas' is directly analogous to the term deemed problematic in *Thomas*, and the Court cannot ascertain how the inclusion of the word 'strict' would cure the problem identified by the Fourth Circuit.")[3]; *Nora P. v. Comm'r Soc. Sec.*, No. SAG-18-1604, 2019 U.S. Dist. LEXIS 68383, at *4-5 (D. Md. Apr. 23, 2019) (remand warranted where RFC failed to define phrase "no fast pace or strict production requirements.").

Some cases have affirmed RFC language or VE hypotheticals in which ALJs have elaborated on "production rate pace," or similar terms, with additional descriptors or examples. *Briana H. v. O'Malley*, No. 23-1288-CDA, 2024 WL 4349836, at *5 (D. Md. Sept. 30, 2024)

---

[3] The term "production rate pace" appears in Appendix C to the Department of Labor's *Dictionary of Occupational Titles*, in a section enumerating three situations in which occupations that would otherwise be classified as "sedentary work" (because the amount of weight lifted is negligible) instead qualify as "light work." The third such situation is: "when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible." U.S. Dep't of Labor, *Dictionary of Occupational Titles*, Appendix C — Components of the Definition Trailer, 1991 WL 688702 (4th ed. 1991). The discussion goes on to explain: "NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible." *Id.* However, no definition is given of "production rate pace," and its use in this narrow context does not elucidate a general meaning.

*William S. v. Frank Bisignano*
Civil No. 25-2000-DRM
May 8, 2026
Page 5

(affirming where "here, unlike in *Thomas*, the ALJ defined 'production rate' in the hypothetical question to the VE explaining that the 'no production rate requirement' meant 'assembly line work.'"); *Jackie W. v. Comm'r, Soc. Sec. Admin.*, No. DLB-18-3883, 2019 WL 5960642, at *4 (D. Md. Nov. 13, 2019) (affirming where RFC excluded "fast-paced production work" and ALJ stated to VE "[a]nd they could not perform work that would require fast-productivity goals, like — like assembly-line work."). *See also Melissa J. v. Kijakazi*, No. 22-1003-BAH, 2023 WL 206686, at *3 (D. Md. Jan. 13, 2023) (collecting cases which "have held a limitation on 'production rate or pace' combined with a prohibition on quotas provides enough detail for judicial review.")

However, the Fourth Circuit subsequently held in *Linger v. Comm'r of Soc. Sec.*, No. 22-2192, 2025 WL 40548 (4th Cir. Jan. 7, 2025), that the phrase "no fast paced production requirements such as assembly line work or piecemeal quotas," was not an adequate description of a limitation because "though the ALJ provided some examples, there [was] uncertainty as to the intended scope of the limitation, and such uncertainty preclude[d] meaningful review as to whether there is a logical bridge between the evidence in the record and the ALJ's conclusion." *Linger*, 2025 WL 40548, at *5 (citing *Perry*, 765 F. App'x at 872). The Court finds the reasoning of *Linger* persuasive[4] in elucidating the holding of *Thomas* for situations where ALJs provide examples such as assembly line work or time- or piece-based quotas. These examples do not ultimately clarify the meaning of terms like "a production rate or demand pace," *Thomas*, 916 F.3d at 312, or "fast paced production requirements," *Linger*, 2025 WL 40548, at *4, and it is questionable whether the outcomes of *Briana H.*, *Jackie W.*, or *Melissa J.* could be the same following this elucidation.

Here, the RFC term "a specific production rate pace," Tr. 24, is "analogous to the terms in *Thomas* ('production rate' or 'demand pace') and *Perry* ('non-production oriented work setting'), both in form and defect." *Trena Sue Y.*, 2021 WL 4034264, at *4. The examples given: "such as an assembly line or hourly production quotas," Tr. 24, fail to clarify the term's meaning for the same reason that the examples "such as assembly line work or piecemeal quotas" failed in *Linger*. Indeed, this Court has recently remanded very similar formulations for the same reasons. *Al-Nissa J. v. Bisignano*, No. DRM-25-1593, 2026 WL 1088433, at *4 (D. Md. Apr. 21, 2026) ("specific production rate pace, such as assembly line work or an hourly production quota"); *Jason M. v. Bisignano*, No. DRM-25-0358, 2026 WL 523879, at *2-*4 (D. Md. Feb. 25, 2026) ("specific rate production, such as assembly line work or work that requires hourly quotas"); *Chad H. v. Bisignano*, No. DRM-25-0380, 2026 WL 483338, at *3-*5 (D. Md. Feb. 20, 2026) ("specific production rates").

For the same reasons, it is difficult for the Court to ascertain whether the RFC finding in this case was supported by substantial evidence, *see Thomas*, 916 F.3d at 311-12, or whether it was possible for the VE to know whether a person limited to work not involving a "specific production rate pace" could perform the job functions of routing clerk / mail sorter, cafeteria attendant, small parts assembler, telephone / information clerk, and election / poll clerk. The mere

---

[4] Unpublished Fourth Circuit opinions are "cited for the persuasiveness of their reasoning, not for any precedential value." *Ortiz v. Ben Strong Trucking, Inc.*, 624 F. Supp. 3d 567, 580 (D. Md. 2022).

*William S. v. Frank Bisignano*
Civil No. 25-2000-DRM
May 8, 2026
Page 6

inclusion of illustrative examples does not establish the logical bridge between the evidence and the RFC limitation required for judicial review.

Because the case is being remanded on other grounds, I need not address Plaintiff's other argument(s). On remand, the ALJ is welcome to consider these arguments and make any required adjustments to the opinion. Additionally, in remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

V.    **CONCLUSION**

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be docketed as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Douglas R. Miller
United States Magistrate Judge